All right, so our first case for this morning is case number 417-0184 in Reavia Estate of McNaught. And for the appellant we have Mr. Murphy and for the appellee we have Ms. Hamilton. You may proceed counsel, thank you. May it please this honorable court and counsel for attorney Barton. Your honors, I don't know that I'm going to need the entire time, the 20 minutes, because while this may not be an easy case, it's a simple case. And I want to start here, that the Pugsley case was correctly decided and the trial judge was correct in following it. In every case I submit where the basis of the lawsuit is a renunciation of a will, you will never be under subsection D of the Limitations Act. It is a logical impossibility because the injury can never occur at the death of the client. Other things have to happen. The will has to be admitted, then later down the road there has to be a renunciation. And all the cases, starting with the Peterson case, I believe that was Justice Kilbride's case, all the cases that follow it, including Justice Garmon's case and the Snyder case, say that the literal language in subsection D that says until the death of the client means up on the death of the client. That phrase is repeated through every case. Now, when Mr. McNaught, in this case, passed, when his will was admitted to probate, his estate had not been injured. He was doing swimmingly well. If things had passed according to his will, there would have been no problem at all. But, after the expiration of the date for filing claims and on the last date within which the will could be renounced, the widow renounced. That's when the estate was injured. So, what we have to go to, since we're not under subsection D of the Limitations Act, by definition, we go to subsection B, which gives the usual two-year statute of limitations, after you knew or should have known. Well, we know when the executor of the estate knew or should have known. When the decedent's widow renounced the will, the estate knew they had a problem. Now, Justice Appleton, I do believe that you were on the panel when the McNaught State went up. The executor was bound, duty bound, to contest the renunciation. But the renunciation held because of the plain language in the premarital agreement. The executor didn't get done what had to be done to make the premarital agreement effectual. In this case, the issue is, that would be subsection C of the Limitations Act, the statute of repose. Now, that's, and I said this, I think the trial judge in this case did an excellent job. You just hope that you get a trial judge like that every time, someone who reads the record, studies it, thinks about it, and writes about it. But I think he was wrong on subsection C. Now, remember, we're construing a statute. Whether you are a textualist, like Justice Scalia, or a pragmatist, like Richard Arnold Posner, it's still a statute. We have acts, affirmative acts, and we have omissions. What I'm saying in this case is that there was never an omission that we can look to until the date of Mr. McNaught's death. Counsel, I agree that you've narrowed it down to what the issue is, but here's my question. With the Fricka case, it tells us that the omissions must occur in the context of some affirmative act of representation, and that when that act of representation ends, the period of repose must begin, even if the continuing omissions may contribute to the injury. And therein lies the rub. Therein lies the rub. And I think that a careful reading of Fricka is cabined. And it's cabined because it says when the representation ends. This premarital agreement was the beginning of the representation. And the representation never ended. Now, there is, in the appellee's brief, a statement that says there's no basis for that. But attached to the plaintiff's complaint is Attorney Barton's affidavit. And he said, to the best of my knowledge, I was the only lawyer who continued to represent Mr. McNaught until the date of his death. Okay, what about O'Brien? That talks about the last act of representation with regard to the omission upon which the malpractice is founded. That's the critical date that triggers the statute. O'Brien, I think, is the key to this case. If my memory doesn't fail me, that was Judge Breslin's decision. And what happened in that case, almost like this case? Divorce. The lawyer was required to produce a quadro. One of these things that says how your pensions are going to be divided down the road. He didn't do it. His client then sued him because he didn't do it, she didn't get the pension, time had passed. But the key to that case is, the relationship between the attorney and the client had ended. She wouldn't pay him. As it relates to the divorce proceeding and the preparation of the quadro, he basically said, I will no longer represent you on this. We don't have similar facts in this case. Well, what happened in this case, and remember, the standard here is an objective standard. Mr. Barton didn't understand the import of the agreement that he drafted. He thought it meant something that it didn't. But that's his subjective reason for his blunder. And the test is objective, what a reasonable person would do. And inasmuch as this court has said it plainly required this, this was off the table. He continued to represent this decedent. Now, he may say when I say, well, to the best of my knowledge, but that's enough to at least create a fact question in this case, where somebody could do discovery and prove it up. So we are very much like O'Brien and Scoville. What happened to the client in O'Brien was, she wouldn't pay her lawyer and her lawyer said, I'm finished. That didn't happen. That didn't happen here. Now, when you think about a case like this and you think about the statute, the legislature said we have acts and we have omissions. And to a certain extent, we've conflated those. But we're all bound by precedent. You are, we all are. But there's absolutely no reason to stretch that text out of all reasonable analysis to defeat this claim. You know, I want to be very careful about my language here. But this decedent wanted his natural daughter to get his estate. Not his younger wife. He retained a lawyer to do that. The lawyer got a start on it. But as I say in my papers, this pre-marital agreement didn't do anything. It really just said, here's where we are, but we have got to do these things. We didn't get these things done because the lawyer didn't understand what he had written. It never, it never got done. Now think, I want to leave you with this thought. The appellees have said that the time to look at is the date that the PMA was executed. How can that be? They weren't even married. All of this was completely executory. Things had to be done. The scope of the representation in this case was to protect this estate from the widow's renunciation. That's what it was for. If Mr. Barton had prepared the trust or amended the will the day before Mr. McDodd died, there would be no omission. And I'm saying, if the PMA said this is to be done in seven years down the road and it wasn't done, no one would say that there wasn't an omission as of seven years down the road. It's just said during his lifetime. So, this is not, you don't have the problem here that you had in Snyder, where you're going to have a present conveyance. If I'm entitled to a deed and I don't get it, I've been harmed right then. Because that's a present interest. All that's involved here is, is to tie things up so his estate holds. Do either of your honors have any questions? That is my case. I don't see any at this time, counsel. All right, thank you. Thank you. You'll have time on rebuttal if you so desire. Ms. Hamilton. Thank you, your honors. Good morning, counsel. My name is Ms. Hamilton.  May it please the court. I think the trial court's order did an excellent job of explaining the issues in this case and specifically going through whether subsection C or subsection D applied. Now, obviously, both subsection C and subsection D have different statutes of repose. But the point that we tried to make in our atelier brief is that under either subsection C or subsection D, the complaint is time barred. Now, as the trial court pointed out in its order, the real focus, the real gravamen of the complaint is this preparation of the PMA, which was executed on June 28, 2006, which is approximately 10 years before the complaint was ever filed. Now, the complaint, again, it frames the issues that we're looking at. So I, you know, when I'm starting to write a motion or a reply or an atelier brief, I go back to the complaint and say, all right, what am I really dealing with? And if you look at the specific allegations in the complaint, there's two subparagraphs. This is in 13A and 13B of the plaintiff's complaint. Now, A was that they alleged that Mr. Barton intentionally did not draft the estate planning documents required by the PMA because he thought that the provisions for Terry in the last Will and Testament satisfied what was required of David under that PMA. So that's part one of their allegation. Part two is that Mr. Barton failed to draft a PMA that contained the same benefits for Terry as bequeathed to her in David's last Will and Testament. Now, from my understanding of the reply brief is that plaintiffs and appellants have already conceded that subparagraph B is already barred under subsection C and that squarely falls within the statute of repose for six years. So I think we're okay there. We're clear. So that leaves us with A, which is intentionally did not draft the estate planning documents because he thought that the provisions in the prior last Will and Testament, which was actually drafted back in 2003, satisfied the requirements in the PMA. Well, the trial court pointed out that really using that language, the key date was that preparing of the PMA, the June 28th of 2006, because they're saying that my client had an incorrect belief and that he was negligent in believing that on that date that there was nothing else to do. Everything was done, that the PMA would be valid, that the PMA would be effectual, that the premarital agreement would go into effect immediately upon its execution. So that really is the focus, that date, the June 28th of 2006. So that's why I believe the trial court was absolutely correct in finding that subsection C governs and that this whole complaint is time barred. However, the reason that we also raise it in our brief is because obviously this court can affirm the trial court's dismissal based on any other facts in the record. And we believe that regardless of whether you look at the alleged act or omission, subsection C, or whether you're looking at the date of the alleged injury, subsection D, under either subsection, the complaint is time barred. But I'd like to stay focused on subsection C, if your honors could, just that way I can track the appellant's argument as well. I'm a bit of a stickler for organization whenever I can, so I'm just trying to make sure that I answer all counsel's points. Specifically Snyder v. Heidelberger, and that was the case, the Illinois Supreme Court case that the trial court addressed in detail. That was a situation where there was a negligent preparation of a quick claim deed, and then there was a failure to discover that that land was actually held in trust. Now that discovery didn't happen until after Wilbert, the individual who's going to be transferring the property, died. And again, the Illinois Supreme Court was very clear in stating the purpose of a statute of repose. It has nothing to do with when you discover the injury. It has nothing to do with when the plaintiff knows or should have known. And it can sometimes be harsh in its application. But the legislature has a very specific purpose in having those statutes of repose. It's not tied to the existence of an injury. It extinguishes liability after a fixed period of time, and that's the Illinois Supreme Court at page 419 of that Snyder v. Heidelberger case. It begins to run when a specific event occurs, regardless of whether the action has actually accrued. So again, the focus of subsection C is the date when the claimed act or omission occurred. In this case, June 20, 2006, when the plaintiff's claim that Mr. Barton should have drafted a PMA that was effectual vis-a-vis the Last Will and Testament, or should have known at that same time, uh-oh, wait a minute, the thing that I'm drafting right now is not effectual because there's no Last Will and Testament that coincides with that. So under subsection C, and under the specific language of Snyder, the complaint is time-barred. In Snyder, the Illinois Supreme Court also talked greatly about the difference between the WACRO case, which I know I cited to in my subsection D argument. I'll get there in a moment. It was interesting the way that the Illinois Supreme Court talked about how the injury was actually learned by the plaintiffs was simply just an outgrowth or a consequence of the injury which was actually caused by the failure of the quick claim D to convey the property. So just in this case, the renunciation was simply an outgrowth or consequence of the claimed injury and or omission of the failure of the PMA to prohibit such a renunciation. Plaintiffs have made several arguments about a to-do list, or saying that the PMA was simply a list of things that needed to be done in the future. And I'd also like to address the claim that there is a continuous representation. The Mowerby-Rubin case is very clear on that. There's no continuous course of negligent representation doctrine for legal malpractice in Illinois currently. If there is, I certainly haven't heard of one. I don't claim to be omnipotent in my research of case law, but the Mowerby-Rubin case is very clear on that. And moreover, the appellate court in Mowerby-Rubin also said that even if there were such a doctrine, there needs to be specific allegations that each negligent treatment or negligent action has to add to the harm. And it talks about compounding effects in the aggregate. There are no such allegations in the complaint. There's no such allegations in this case. So even if there were a continuing course of negligent representation doctrine for legal malpractice in the state of Illinois, this case doesn't have any of those facts. The affidavit that was referred to talking about a continuous representation, if you look at it, it is in the record on page 8. The statement specifically wasn't that there was continuing representation. It was simply that Mr. Barton stated quote, to my knowledge, I was David's only attorney from 2003 until his death on matters involving estate planning or real estate. End quote. That's a very different statement than saying I continuously represented him. I continued to make revisions to his wills. He was asking me to do things and I was constantly working on them. In this case, there's absolutely no allegation whatsoever that Mr. Barton did any work whatsoever since June 28, 2006. And your honors are correct in that Fricka v. Bauer and O'Brien v. Scoville are very instructive on that issue of that the statute of repose has to start running on the last date of some act of affirmative representation. The Fricka case was affirming a 2619 dismissal of a legal malpractice claim involving the preparation of a deed. And that I think is very interesting because it also dealt with the claim that there was no mission that could have prevented the injury. In that case, the attorney prepared the deed, gave it to the bank. The bank then sent it to the individual to sign. It was sent to the individual on February 12, 1992. It wasn't even signed until March 20, 1992. Now when the legal malpractice case was filed, they tried claiming that March 20 should have been the effective date. And the court said no, actually because that's not when he finished his work. He must have finished his work when he sent the deed to the bank, which had to be prior to February. So they actually went a step further in this case. Whereas I'm arguing, okay, we know for a fact that the PMA was signed on June 28. In Fricka, they actually went a step further with that and said, well, he must have drafted the PMA or in Fricka, in this case the deed, prior to that date. So the statute had to start running prior to that date. Similarly with O'Brien v. O'Brien, the issue with the quadro and the quadro preparation. And this is an issue that I know has been very contentious lately with legal malpractice cases arising from divorce cases. You know, when does your representation end? Does your representation necessarily include the preparation of a quadro? Courts are torn on that issue. A lot of them say no. The representation involves representation for the divorce and quadro is a separate representation. But nevertheless, the court in O'Brien specifically said that even if the divorce judgment contemplated like plaintiffs argued, a to-do list, i.e. and someone will be preparing a quadro to effectuate this document, they still said no, no, no. It doesn't matter. You can't extend that statute of repose indefinitely. Because the purpose of a statute of repose is to have a strict cutoff date for liability. So in the O'Brien case, the court was very clear in that, nope, the representation ended. There was no evidence that the attorney did anything else for that client. And notwithstanding the client's claim that he should have also prepared a quadro, much like the plaintiff's claim here that Mr. Barton should have prepared additional estate documents, that doesn't extend the subsection C timeframe. So for those reasons, I believe that the trial court's dismissal under this court, but if I may briefly address the subsection D argument, just simply because this court may affirm the dismissal based on that subsection D as well, even if we were to assume that there was a continuing course of representation doctrine, and even if we were to assume that the PMA was a to-do list and that Mr. Barton agreed to do all of those things as opposed to Mr. McNaught having to get someone else to do them, regardless, the claim would be barred by subsection D. And that's illustrated in the Wackrow v. Miami case, which we cited too. If you're dealing with a negligent amendment or negligent preparation of estate planning documents, then... Under Wackrow, we know that the only inquiry we ask when we're dealing with subsection D is whether or not the injury caused by the death of the client. So what I'm wondering is how can that apply here when we know that we had to have the extra step of the renunciation? If he had died and there had been no renunciation, do you agree D would not apply? Well, no, Your Honor, because I think that the actual injury isn't the renunciation itself. It's the inability of the PMA to prevent that renunciation. Well, what injury would there have been had the will not been renounced? Upon the staff, what was the injury, assuming the will was not renounced? There may not have been actual damages, but there certainly could have been a claim made. There would have been an injury to the estate in that a renunciation was possible. The PMA would not have been effective. So a perspective of potential injury? No, I think, respectfully, Judge, I think it still would have been an injury because I think that the estate lost the ability to prevent that. If the will were not renounced? Well, the estate would have had to still deal with a competing claim. What if it wasn't filed? There was no renunciation filed. She said, fine, I'll just accept what happened. Well, then the estate certainly would not have sustained any actual damages. I agree with Your Honor there. But I do believe that the fact that the PMA was found to be ineffective in preventing her ever having a right to renounce, I think that in that sense WACRO can be instructive. WACRO talked about how the injury became irreparable following the death. So in this case, if the injury is preventing the possibility of a renunciation, that injury became irreparable following the death. And again, Judge, I believe that subsection C bars this complaint. Again, this is our alternative argument under subsection D. But to the extent that there's a claim that there's a failure to properly prepare Last Will and Testament documents, WACRO is specific that the date of injury is then the death because that's the point where everything is cut off. You can't fix the Last Will and Testament after that point. And even under a subsection D framework, again, the complaint is time barred because they still did not file their claim within the time frames prescribed by subsection D. As to the Pugsley case, I think that there's some key distinctions that we laid out in our brief as well. But in that case, there was a failure to convey real estate when the then decedent was alive. The attorney specifically said, I'll take care of it. I will do this. And he was supposed to be severing that joint tenancy and deeding the farm to the girls. That was the the husband then subsequently revoked the will. And then there was called into question much later the ownership of the farm. None of those facts are present here. There was no affirmative statement on the part of Mr. Barton saying, I'm going to do X. There was no request for present interest on the part of Mr. McNaught to do something with relation to his Last Will and Testament. None of those facts were alleged in the complaint. So I don't believe Pugsley somehow removes this case from either subsection C or subsection D. And I think the part that was troubling for me is essentially in this case, the plaintiffs are saying that there really is no statute of repose that applies. And I think that in all the other cases that we've discussed, they either fell within subsection C or subsection D. We have to have a cutoff. There has to be some statute of repose. And in this particular case under either framework, both statutes of repose would apply and deem the complaint untimely. And that's why we would ask that the dismissal be affirmed. That's all I have. Thank you, Counsel. Any rebuttal, Mr. Murphy? Yes, I do. First, PRCA is like the Peterson case. We're dealing with a conveyance. A present conveyance. The injury occurs then when you're deprived of your interest in the estate. Right then. Whether you know about it or not is not the analysis. That's it. This is not such a case. Now, I hope I make this clear, but there is a subtle distinction here. The affidavit of Mr. Barton explains why he didn't do something. But that's not what the negligent omission is. That is his subjective thinking. The test is objective. What would a reasonable man do under the circumstances? So, at no time during Mr. McNaught's life could he have filed any type of claim if he said, for instance, I'm suing you because I paid you to do this for me and you haven't done it. The answer, of course, and the complete answer is, wait a minute. I didn't say when I would do it. I just have to do it when you're alive and I'm going to get to it next week. That is almost an unanswerable proposition. At no time so long as Mr. McNaught lived could he have demanded that his lawyer do something. Now, it is also true that a better lawyer than me could have probably drafted a more complete complaint if he had done discovery, if he had the file, if he knew all these things. But remember, this motion here is an affirmative defense. It's an affirmative defense. It admits everything well pleaded in my complaint. So, that's the next thing. The Wackrow case was a trust case. It wasn't a conveyance. And the main significance, I think, of Wackrow is explained by Justice Garman in the Peterson case. And what she teaches us is that there the sister of the client was not entitled to anything as long as her brother lived. It was only when he died that she was then entitled to this house. So she thought. But the lawyer had bungled this some time ago. And in that case subsection D trumps everything, so to speak. Trumps everything. Now, the last thing I want to leave you with, there's a lot of talk here about stale claims. It has to be cut off somewhere. Okay. But keep in mind that often subsection D will revive an ancient claim. Remember in Peterson, Justice Kilbride's case, the plaintiff wanted to fit into subsection D. And he did. If we if the plaintiff in this case were somehow able to maneuver this case into subsection D, it wouldn't matter if the negligent omission happened 50 years ago. It would still be actionable. I do think, I do think, and these are the cases that I cited, the O'Brien and Scoville case, I think the opinion there is pretty clear. If that client had maintained her representation with this lawyer, he was on the hook for not doing that. That's certainly a part of it. Because when you think about it, a premarital agreement that requires something to be done later doesn't do anything. It doesn't change the relationship of the parties at all. It's just a start. It's a to-do list. Your Honor, thank you for entertaining my argument. It's been a real pleasure to be here. Thank you counsel for your thoughtful briefs and your argument. We'll take this matter under advisement and be in recess until the next case. Thank you.